**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

GLORIA TURNAGE, *on behalf of herself and all* )
*similarly situated individuals*, )
)
            Plaintiff, )
)
v. )    Civil Action No. 3:25-cv-840
)
AION MANAGEMENT LLC, and )
AP 11 NORTH LLC, )
)
          Defendants.

## CLASS ACTION COMPLAINT

Plaintiff Gloria Turnage, on behalf of herself and all other similarly situated individuals, files this Class Action Complaint against Defendants AION Management LLC ("AION Management") and AP 11 North LLC ("AP 11"), and alleges as follows:

## PRELIMINARY STATEMENT

1.    This is an action for actual, treble, and statutory damages, costs, and attorneys' fees for Defendant's violations of the Virginia Consumer Protection Act ("VCPA"), Va. Code § 36.96.1, *et seq*., and the Virginia Residential Landlord Tenant Act ("VRLTA"), Va Code. § 55.1-1200, *et seq.*

2.    Plaintiff's claims stem from AION Management's (the management company at her apartment complex) and AP 11's (her landlord) fraudulent and unlawful conduct in imposing and collecting a $10-per-month "pest control reimbursement" ("Pest Fee") and a $10-per-month "trash reimbursement" ("Trash Fee") (collectively, the "Disputed Fees") that Defendants represents as necessary for each tenant to receive pest-control services and a sanitary premises

and as simply reimbursing the actual costs to it of providing such services, but that are in fact a profit generator that do not cover the services Defendants claims to be covered and are not lawful under Virginia law in any event.

3.    Defendants' conduct is part of an increasingly common practice by landlords and property management firms across the country to impose additional so-called "junk fees" on unsuspecting tenants that are supposed to be covered by the tenants' monthly rent. Landlords and property managers like Defendants here utilize these fees in lieu of advertising the true cost of renting from them so that they can advertise units at a lower sticker price, only to generate additional profits through backdoor fees after the prospective tenant has been lured in. To come up with reasons for these fees, landlords and property managers represent to tenants that the fees are merely to cover the costs of specific services, but in reality they do not intend to in fact provide those services at the advertised cost and, worse, conceal from their tenants that they are already required to provide those services under state law.

4.    As federal data has shown, these fees add up to create a disproportionate burden on Virginians—particularly low- and middle-income Virginians—that deprives them of funds to pay other expenses, to save for a home, and to move up the socioeconomic ladder.[1]

5.    Defendants were well aware at the time it implemented the Disputed Fees in Plaintiff's and the class members' lease agreements that they bore the sole burden of providing

---

[1] See *Federal Data Shows Many Virginians are 'Rent Burdened'*, Va. Public Radio (Sept. 24, 2025), https://www.wvtf.org/news/2025-09-24/federal-data-shows-many-virginians-are-rent-burdened; *Nearly Half of Renter Households are Cost-Burdened, Proportions Differ by Race*, U.S. Census Bureau (Sept. 12, 2024), https://www.census.gov/newsroom/press-releases/2024/renter-households-cost-burdened-race.html (last visited Oct. 1, 2025).

pest-free and sanitary premises to their tenants. Indeed, both VRLTA and the Virginia Court of Appeals have explicitly held that such fees cannot be charged to tenants. *See* Va. Code § 55.1-1220(A) (requiring landlords to, in relevant part, "[m]ake all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition"); *Parrish v. Vance*, 898 S.E.2d 407, 411–14 (Va. Ct. App. 2024) (holding that a landlord could not shift the burden to deal with insect infestations to their tenant through a lease agreement, because Va. Code. § 55.1-1220(A) provides tenants a warranty of habitability that cannot be waived through an agreement).

6.      Notably, missing from the lease's section outlining relevant sections of the Virginia Residential Landlord Tenant Act, is a disclosure that Plaintiff and her similarly situated tenants at AION Management properties are already entitled to the rights and services that the lease agreement conditions upon payment of the Disputed Fees and that the landlord bears the burden under Virginia Law to provide.

7.      Further adding to the deceptive nature of the lease conditions, Defendants charge a flat rate for the Pest Fee and Trash Fee when in fact, upon information and belief, they do not incur expenses from their pest control and trash collection vendors commensurate with the Fee.

8.      Indeed, Plaintiff received only intermittent pest control services in her apartment since moving in, even though she is paid $10 a month for the service as a supposed "reimbursement."  And Plaintiff has to take her own trash to a common receptacle at her apartment complex, while she and her co-tenants pay almost $12,000 a month to Defendants for the privilege of doing so.

3

9.      Instead of providing the services that Defendants claim in their leases are covered by the Disputed Fees, Defendants in fact uses the fees to generate additional profit, while shifting the burden of providing a pest-free, sanitary, and habitable living space onto their tenants.

10.      Thus, Defendants engaged in and continue to engage in and profit from a scheme that induces the tenants in the properties it manages into a residential lease that misrepresents their rights to certain services related to the warrant of habitability—guaranteed under Virginia Law—and forces them to waive such rights.  Living with the harm of having paid, and continuing to pay, Defendants' deceptive monthly fees, Plaintiff is forced to bring this lawsuit to seek relief for Defendants' ongoing violations of the VCPA.

## JURISDICTION AND VENUE

11.      This Court has jurisdiction over all Counts under 28 U.S.C. § 1332(d) because Plaintiff and putative class members (Virginia) and Defendants (Delaware and New York) are each citizens of different states and the amount in controversy exceeds $5,000,000 exclusive of interest and costs.  Under 28 U.S.C. § 1332(d)(6), "the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000."  The test for determining whether the amount in controversy is "the pecuniary result to either party which [a] judgment would produce." *Dixon v. Edwards,* 290 F.3d 699, 710 (4th Cir. 2002) (quoting *Gov't Employees Ins. Co. v. Lally,* F.2d 568, 569 (4th Cir.1964)). Statutory damages "are properly includable in the calculation of the jurisdictional amount," including increased damages for willful violations. *See Bartnikowski v. NVR, Inc.*, 307 F. App'x 730, 735 (4th Cir. 2009).  Attorney's fees may also be included in the amount in controversy when recoverable under the asserted statute. *Missouri State Life Ins. Co. v. Jones,* 290 U.S. 199,

202 (1933) (holding that where a state statute provides for the award of attorney's fees, those fees can be considered as part of the amount in controversy).

12.    Here, AION Management has at least 3,340 units among its six Virginia properties, meaning that there are at least 3,340 putative class members (before counting any co-tenants in each unit) in Count One, which seeks relief for all persons who signed a lease with landlords of Virginia properties managed by AION Management.

13.    In Count One, which alleges violations of the VCPA, Plaintiff and each class member are entitled to at least $1,000 per month for each month that AION Management willfully collected the Disputed Fees, which, upon information belief, have been charged in full or in part for at least two years.  This entitles Plaintiff and the class members to at least a total of $24,000 per class member as of the date of this Complaint, or $80,160,000 ($24,000 x 3,340 class members) for the class, which will continue to increase by $1,000 per class member each month that this case proceeds and additional Disputed Fees are collected. Va. Code § 59.1-204; *see Broglie v. MacKay-Smith*, 541 F.2d 453, 455 (4th Cir. 1976) (holding future damages may be included in this calculation when "'a right to future payments. . .will be adjudged in the present suit.'" (quoting 1 Moore's Federal Practice P 0.93(5. 3) at 904)); *Goff v. Jones*, 47 F. Supp. 2d 692, 695 (E.D. Va. 1999) (Lee, J.) (future damages could be considered in deciding amount in controversy.  This is before considering the attorney's fees that the Court could award under the VCPA.  Va. Code § 59.1-204(B).

14.    The Court also has jurisdiction over all other claims under at least 28 U.S.C. § 1367 because they each arise from the same case or controversy as Count One.

15.    Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District and Division, where Plaintiff resides and property owned and/or managed by Defendants is located.

## PARTIES

16.    Plaintiff Gloria Turnage is a natural person residing in this Division and District.

17.    Defendant AION Management is a limited liability company incorporated in Delaware with its principal place of business in New York.

18.    Defendant AION Management is a "supplier" under the VCPA because it is a "seller, lessor . . . or professional . . . who advertises, solicits, or engages in consumer transactions"—namely, the leasing of apartments for personal, family, or household purposes. Va. Code § 59.1-198. AION Management is the entity that collects the Pest Fees, and it is liable for its misrepresentations to Plaintiffs and the putative class members that they owe, and that it can collect, such fees.

19.    Defendant AP 11 North LLC is a limited liability company incorporated in Delaware with its principal place of business in New York.

20.    AP 11 is a "supplier" under the VCPA because it is a "seller, lessor . . . or professional . . . who advertises, solicits, or engages in consumer transactions"—namely, the leasing of apartments for personal, family, or household purposes.  Va. Code § 59.1-198.  AP 11 is liable for its misrepresentations to Plaintiffs and the putative class members that they owe, and that it can collect, such fees.

21.    AP 11 is also a "landlord" as defined by the VRLTA, as it is the owner and lessor of the dwelling units at the Pointe at River City apartments, of which Ms. Turnage is a tenant.

## FACTS

### *Plaintiff Turnage's Lease Agreement*

22.    Plaintiff Turnage is a resident of Henrico, Virginia.

23.    She resides at the Pointe at River City apartments, which is owned by AP 11 and managed and operated by AION Management.

24.    Ms. Turnage has lived in the Pointe at River City for several decades.

25.    Within the last two years, Ms. Turnage's lease agreements with AP 11, which were drafted and published to her by AION Management, have included provisions requiring her to pay a $10-per-month Pest Fee and a $10-per-month Trash Fee.

26.    Pursuant to the terms of these lease agreements, each month in at least the past two years, AION Management has charged and collected from Ms. Turnage and the putative class members in Count One what it describes as a "pest control reimbursement," which is the same thing as the $10-per-month Pest Fee, and a "trash reimbursement," which is the $10-per-month Trash Fee.

### *Defendants' Unlawful and Deceptive Pest Fee*

27.    AION Management, through its employees, is responsible for providing the leases to Plaintiff and the putative class members in Count One, and for collecting all amounts allegedly owed under their leases.  Upon information and belief, AION Management is responsible for drafting the terms of the form lease agreements used at all of its properties, including Plaintiff's leases, which misrepresent to tenants like Plaintiffs that it can collect the Pest Fee at issue in this lawsuit and that the fees are intended for services that AION Management never intended to provide or to provide at the actual cost to them. AION

Management is also directly responsible for publishing to tenants monthly invoices and other correspondence claiming that such fees are duly owed under the terms of their lease agreements and are merely a "reimbursement" for pest control services, when that is not the case.

28.    Although Defendants claim that Plaintiffs and others lawfully owed the Disputed Fees, Virginia law prohibits Defendants from collecting the fee.

29.    Indeed, the assessment of the Disputed Fees directly violates Virginia Law, which prohibits landlords from creating lease provisions that waive the warranty of habitability established by Va. Code § 55.1-220(A). *See Parrish v. Vance*, 898 S.E.2d 407, 411–14 (Va. Ct. App. 2024) (holding that a landlord could not shift the burden to deal with insect infestations to their tenant through a lease agreement, because Va. Code. § 55.1-220(A) provides tenants a warranty of habitability that cannot be waived through an agreement).

30.    Here, Defendants require their tenants to pay a monthly fee to cover pest-control costs as well as trash receptacles.  The imposition of this fee not only violates the Virginia Residential Landlord Tenant Act but also misrepresents the nature of the lease transaction in representing that tenants must pay an additional cost in order to reside at the property and secure a right to a pest- and trash-free premises.  This conduct is in direct violation of the Virginia Consumer Protection Act.  Va. Code § 59.1-200(14).

31.    Despite the explicit obligations of Virginia law, of which they were well aware, Defendants knowingly forced Plaintiff and all other similarly situated tenants to waive their right to the warranty of habitability and the Virginia Residential Landlord Tenant Act.  Defendants shifted the obligation to maintain a pest- and trash-free premises onto its tenants and profited from the imposition of fees that they had no right to charge.

32.     Regardless of the legality of the Disputed Fees under Virginia law, moreover, the assessment of such fees is also deceptive for the independent reason that Defendants intentionally misrepresents the purpose and use of such Fees, which are not intended—and were never intended—to simply cover the costs of the pest control and trash collection services purportedly being covered by the Fees, but were in fact an additional profit generator that allowed Defendants to advertise lower rent prices before luring unsuspecting consumers into leases packed with additional, unlawful fees that generated profit for it and its landlord clients.

33.     Although charging Plaintiff and the tenants at AION's Virginia properties a $10-per-month Pest Fee and a separate $10-per-month Trash Fee, upon information and belief, the actual costs of those services is far less than the amount of revenue generated by the Fee.

34.     Indeed, Plaintiff has only received sporadic pest control treatment in her unit, despite paying a monthly fee to supposedly "reimburse" the pest control vendor.

35.     Likewise, Plaintiff has not received any trash collection services directly to her unit.  Instead, she must take all of her own trash to a common dumpster on the property, which, upon information and belief, does not cost the almost $12,000 per month that Defendants collect from the Trash Fee at Plaintiff's apartment complex.

36.     Upon information and belief, the same is true of the other AION Management properties in Virginia: the costs of covering the pest control and trash receptacle services is far less than the amounts collection by AION Management from the tenants at each respective property.

37.     Upon information and belief, Defendants instead imposed the Disputed Fees for the purpose of generating additional profit and did not intend—and never intended at the time

they had Plaintiff and the class members execute their lease agreements—to provide the promised services for the amount charged. Instead, Defendants intentionally charged fees that were far higher than any costs to them of providing pest control and trash receptacles so that they could generate additional profit for their own pecuniary gain.

38.     Just considering the number of units at Plaintiff's apartment complex (1,184), alone, for example, Defendants collect almost $12,000 a month in pest fees, or over $142,080 a year, which they claim simply reimburses the pest control costs incurred by the complex. Upon information and belief, the actual cost of these services is far lower, including because services are rarely, if ever, provided within individual units.

39.     The cost of paying for a common dumpster at Plaintiff's complex is also far less than the $142,080 that Defendants collect and represent to Plaintiff and the class members as merely as "trash reimbursement." Far from simply reimbursing the cost of a dumpster, the Trash Fee in fact generates additional profits for Defendants for services that they are already obligated to provide under Virginia law as a condition of Plaintiff's and her co-tenants' payment of monthly rent.

40.     Defendants' misrepresentations of the Disputed Fees were willful. Defendants stood to rake in thousands in additional revenue and cost savings from tenants to cover costs that should have been covered by their rent and which were the landlords' sole burden to bear under Virginia law. Defendants also profited from the imposition of the Disputed Fees, as the revenues generated by such fees exceeded the actual costs of providing the alleged services that they covered. Defendants thus had a pecuniary incentive to represent to Plaintiff and the

putative class members that such fees were collectible, when they explicitly were not under Virginia law.

41.    Defendants knowingly forced Plaintiff and its other tenants to assume the landlords' obligations to maintain pest- and trash-free premises and profited from the imposition of Disputed Fees that they had no right to charge. They did so solely for their pecuniary gain and without regard to this known harm to their tenants.

## COUNT ONE
### VIOLATION OF VCPA, Va. Code § 59.1-200
### (Class and Individual Claim by Plaintiff against Defendant AION Management)

42.    Plaintiff incorporates each of the preceding allegations.

43.    Under Federal Rule of Civil Procedure 23, Plaintiff brings this action on behalf of the following class of which she is a putative class member:

> All persons who: (1) executed a lease within the past two years at a property managed by Defendant AION Management and located in Virginia under which they (2) paid a Pest Fee or Trash Fee.

44.    **Numerosity. Fed R. Civ. P. 23(a)(1)**.  Upon information and belief, Plaintiff alleges that the class members are so numerous that joinder of all is impractical.  There are at least 3,340 class members based on the number of units at AION Management's Virginia properties.  The class members' names and addresses can be identified through discovery, and the class members may be notified of the pendency of this action by published or mailed notice.

45.    **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2) and Fed. R. Civ. P. 23(b)(3).**  Common questions of law and fact exist as to all putative class members, and there are no factual or legal issues that differ between them.  These questions predominate over the questions affecting only individual class members.  The

principal issues include: (1) whether Defendant AION Management misrepresented to Plaintiff and the putative class members in their lease agreements that payment of the Disputed Fees was necessary to secure their right to pest- and trash-free premises; (2) whether Defendant AION Management misrepresented to Plaintiff and the putative class members that the Disputed Fees would simply cover the costs of providing pest control and a common trash receptacle when in fact the fees each generated profits for AION Management; (3) whether Defendant AION Management's violations were willful; and (4) the appropriate amount of damages for Defendant AION Management's violations.

46.    **Typicality. Fed. R. Civ. P. 23(a)(3).**  Plaintiff's claims are typical of the claims of each putative class member.  In addition, Plaintiff is entitled to relief under the same causes of action as the other putative class members.  All claims are based on the same facts and legal theories.

47.    **Adequacy of Representation.  Fed R. Civ. P. 23(a)(4).**  Plaintiff is an adequate class representative because her interests coincide with, and are not antagonistic to, the putative class members' interests.  She has retained experienced and competent counsel; she intends to continue to prosecute this action vigorously; she and her counsel will fairly and adequately protect the interests of the members of the class; and she and her counsel have no interest that might cause them to not vigorously pursue this action.

48.    **Superiority.  Fed R. Civ. P. 23(b)(3).**  Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to the other available methods for fair and efficient adjudication of the controversy.  The damages sought by each member are such that individual prosecution would

prove burdensome and expensive. It would be virtually impossible for class members to effectively redress the wrongs done to them in individual litigation. Even if class members could afford it, individual litigation would be an unnecessary burden on the Court. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Defendant AION Management's conduct. By contrast, the class-action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

49.    Defendant AION Management represented in lease agreements drafted and published by it to Plaintiff and the putative class members that they were required to pay a Pest Fee and Trash Fee as a condition of securing residence at the respective properties and receiving the right to pest- and trash-free premises. The services conditioned upon these fees are basic aspects of suitable living conditions under the warranty of habitability which Plaintiff and the putative class members are guaranteed when entering into a residential lease agreement. Va. Code § 55.1-1200.

50.    Defendant AION Management's lease agreements failed to disclose that Plaintiff and the putative class members were already entitled to the rights that the lease agreement conditions upon payment of the Disputed Fees. Defendant AION Management also failed to disclose that Virginia Law obligates the landlord—not the tenant—to provide pest- and trash-free premises and that they could not assess such fees in addition to charging rent.

51.     Additionally, AION Management misrepresented to Plaintiff and the class members that the Disputed Fees would cover pest control and trash collection services, when in reality such fees were designed by AION Management to generate additional profit and were intentionally set at a price point far higher than the actual cost of the services.  At the time it had Plaintiff and the putative class members sign their respective lease agreements, AION Management did not have a present intent to provide the services described in Plaintiff's and the class members' lease agreements at the cost they charged for each fee.

52.     Defendant AION Management thus affirmatively misrepresented in the lease agreements with Plaintiff and the putative class members that the payment of a the Disputed Fees was required to receive the benefit of pest control and trash collection services and/or that such fees would simply cover—or "reimburse"—the actual costs of the described services, when in fact they were designed to generate additional profit for AION Management and its landlord customers, including AP 11.

53.     AION Management willfully and intentionally misrepresented the fact that the payment of additional fees was necessary to obtain such services because they knew that such a practice is unlawful, and it wanted to conceal its and its landlord customers' violations of Virginia law and to generate additional revenues at their properties.

54.     "The VCPA creates a new, statutory cause of action distinct from and in addition to common law fraud."  *Ballagh v. Fauber Enters.*, 290 Va. 120, 124 (2015) (citing *Owens v. DRS Auto. Fantomworks, Inc.,* 288 Va. 489, 497, 764 S.E.2d 256, 260 (2014) ("[T]he legislative purpose underlying the VCPA was, in large part, to expand the remedies afforded to consumers and to relax the restrictions imposed upon them by the common law.... Therefore, [it] extends

considerably beyond fraud.")).  The elements "of the two claims are [therefore] different."  *Id.*  The VCPA applies to *both* misrepresentations and fraudulent acts by landlords in relation to a lease agreement, as outlined in § 59.1-200.  Va. Code § 59.1-199(5).  With respect to misrepresentations under the VCPA, a plaintiff need only show (1) reliance and (2) damages.  *In re Lumber Liquidators Litig.*, No. 1:16-md-2743, 2017 WL 29111681, at *12-13 (E.D. Va. July 7, 2017) (Trenga, J.).  There is no requirement that the plaintiff establish the defendant's knowledge of the falsity or an intent to deceive, though the plaintiff may seek damages for willful violations.  *See id.*

55.    Here, Plaintiff and the putative class members relied on the representation that they were required to pay the Disputed Fees to obtain pest control services when they signed their lease agreements and agreed to pay and paid the fees in the amount provided under those agreements.  They also relied on the representation that the fees covered the actual costs to AION Management and their respective landlords of providing the described services.  Had AION Management disclosed that the landlords at its properties could not collect such fees and were already obligated to provide pest- and trash-free areas, or had it disclosed that the fees were higher than the actual costs of the services being provided, Plaintiff and the putative class members would not have agreed to pay the Disputed Fees, which they believed at were necessary to access pest control and trash collection services.

56.    Plaintiff and the putative class members have been damaged by Defendant AION Management's misrepresentations, including through payment of amounts that they believed were necessary to secure their right to pest- and trash-free premises that they were already entitled to under Virginia Law and that were instead retained by Defendants as profit.

15

57.    Defendant AION Management has thus violated Va. Code § 59.1-200 by, at a minimum, using other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction. Va. Code § 59.1-200(14).

58.    Defendant AION Management's violations were willful.  AION Management knew at the time it imposed the Disputed Fees that such fees could not be charged under the clear language of Virginia law and the decision of the Virginia Court of Appeals that prohibited it from charging and collecting the fees in return for providing services they were already obligated to provide.  AION Management also wanted to deliberately conceal the scheme, as they knew it violated the VRLTA and that if tenants knew the fees could not be assessed or were in fact for a profit-generating purpose, the tenants would refuse to pay the fees or otherwise organize against their imposition.  AION Management concealed and willfully misrepresented the true purpose of the Fees for its pecuniary gain, as the fees would help its bottom line and the bottom line of its customers (i.e., the landlords).

59.    Plaintiff and the putative class members are thus entitled to damages for each month in which AION Management collected, or will collect, the Disputed Fees, including, at a minimum, either: (1) their actual damages or $500 per month, whichever is greater, if AION Management's conduct was not willful; or (2) three times their actual damages or $1,000 per month, whichever is greater, if AION Management's conduct was willful.  Va. Code § 59.1-204.

60.    Plaintiff and the putative class are also entitled to their attorneys' fees and costs in prosecuting this action under Va. Code § 59.1-204.

61.    And Plaintiff and the putative class are entitled to injunctive relief enjoining the ongoing collection of the Disputed Fees under Va. Code §§ 59.1-203(C) and 59.1-205.

## COUNT TWO
## VIOLATION OF VRTLA, Va. Code § 55.1-1220
### (Class and Individual Claim by Plaintiff against Defendant AP 11 North LLC)

62.    Plaintiff incorporates each of the preceding allegations.

63.    Under Federal Rule of Civil Procedure 23, Plaintiff brings this action on behalf of

the following class of which she is a putative class member:

> All persons who: (1) executed a lease with AP 11 North LLC under which
> they (2) paid a Pest Fee or Trash Fee.

64.    **Numerosity. Fed R. Civ. P. 23(a)(1)**.  Upon information and belief, Plaintiff

alleges that the class members are so numerous that joinder of all is impractical.  There are at

least 1,184 class members based on the number of units at Plaintiff's apartment complex.  The

class members' names and addresses can be identified through Defendants' and third-parties'

internal business records, and the class members may be notified of the pendency of this action

by published or mailed notice.

65.    **Predominance of Common Questions of Law and Fact. Fed R. Civ. P.
23(a)(2) and Fed. R. Civ. P. 23(b)(3).**  Common questions of law and fact exist as to all

putative class members, and there are no factual or legal issues that differ between them.  These

questions predominate over the questions affecting only individual class members.  The

principal issues include: (1) whether AP 11 is subject to the VRLTA; (2) whether AP 11

violated Va. Code § 55.1-1220 by evading its obligation to maintain a pest- and trash-free

premises and forcing tenants to waive the warrant of habitability through the lease agreement;

and (3) the appropriate amount of damages for AP 11's conduct.

66.    **Typicality. Fed. R. Civ. P. 23(a)(3).**  Plaintiff's claims are typical of the claims

of each putative class member.  In addition, Plaintiff is entitled to relief under the same causes

of action as the other putative class members.  All claims are based on the same facts and legal theories.

67.    **Adequacy of Representation.**    **Fed R. Civ. P. 23(a)(4).**  Plaintiff is each an adequate class representative because their interests coincide with, and are not antagonistic to, the putative class members' interests.  She has retained experienced and competent counsel; she intends to continue to prosecute this action vigorously; she and her counsel will fairly and adequately protect the interests of the members of the class; and she and her counsel have no interest that might cause them to not vigorously pursue this action.

68.    **Superiority.**  **Fed R. Civ. P. 23(b)(3).**  Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to the other available methods for fair and efficient adjudication of the controversy.  The damages sought by each member are such that individual prosecution would prove burdensome and expensive.  It would be virtually impossible for class members to effectively redress the wrongs done to them in individual litigation.  Even if class members could afford it, individual litigation would be an unnecessary burden on the Court.  Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by AP 11's conduct.  By contrast, the class-action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

69.    AP 11 violated Va. Code § 55.1-1220 by forcing tenants to waive the warranty of habitability through either or both Disputed Fees included in the lease agreement.

70.    Virginia law prohibits landlords from shifting the burden to address pest infestations or maintain sanitary and habitable (including trash-free) living conditions to the tenant, because the warranty of habitability is an unwaivable guarantee under Va. Code § 55.1-220(A).  *See Parrish v. Vance*, 898 S.E.2d 407, 411–14 (Va. Ct. App. 2024).

71.    AP 11's demand that its tenants pay a Pest Fee and/or Trash Fee is therefore a violation of the VRLTA.

72.    Due to AP 11's violations of the VRLTA, Plaintiff is entitled, individually and on behalf of the class, to her damages under Va. Code. § 55.1-1259, including, at minimum, the Disputed Fee payments she and the putative class members have made thus far and will make during the pendency of the lawsuit.  Plaintiff and the putative class are also entitled to an injunction enjoining collection of the Disputed Fees into the future.

**COUNT THREE**
**VIOLATION OF VCPA, Va. Code § 59.1-200**
**(Class and Individual Claim by Plaintiff against the Defendant AP 11 North LLC)**

73.    Plaintiff incorporates the preceding allegations.

74.    Under Federal Rule of Civil Procedure 23, Plaintiff brings this action on behalf of the same putative class as Count Two, of which she is a member.

75.    **Numerosity. Fed R. Civ. P. 23(a)(1)**.  Upon information and belief, Plaintiff alleges that the class members are so numerous that joinder of all is impractical.  There are at least 1,184 class members.  The class members' names and addresses can be identified through discovery, and the class members may be notified of the pendency of this action by published or mailed notice.

76.    **Predominance of Common Questions of Law and Fact.** **Fed. R. Civ. P. 23(a)(2) and Fed. R. Civ. P. 23(b)(3).**   Common questions of law and fact exist as to all putative class members, and there are no factual or legal issues that differ between them.  These questions predominate over the questions affecting only individual class members.   The principal issues include: (1) whether Defendant AP 11 misrepresented to Plaintiff and the putative class members in their lease agreements that payment of the Disputed Fees were necessary to secure their right to pest- and trash-free premises; (2) whether AP 11 misrepresented to Plaintiff and the putative class members that the Disputed Fees would simply cover the costs of providing pest control and a common trash receptacle, when in fact the fees each generated profits for Defendants; (3) whether AP 11's violations were willful; and (4) the appropriate amount of damages for AP 11's violations.

77.    **Typicality.** **Fed. R. Civ. P. 23(a)(3).**  Plaintiff's claims are typical of the claims of each putative class member.  In addition, Plaintiff is entitled to relief under the same causes of action as the other putative class members.  All claims are based on the same facts and legal theories.

78.    **Adequacy of Representation.**  **Fed. R. Civ. P. 23(a)(4).**  Plaintiff is an adequate class representative because her interests coincide with, and are not antagonistic to, the putative class members' interests.  She has retained experienced and competent counsel; she intends to continue to prosecute this action vigorously; she and her counsel will fairly and adequately protect the interests of the members of the class; and she and her counsel have no interest that might cause them to not vigorously pursue this action.

79.    **Superiority.**  **Fed R. Civ. P. 23(b)(3).**  Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to the other available methods for fair and efficient adjudication of the controversy.  The damages sought by each member are such that individual prosecution would prove burdensome and expensive.  It would be virtually impossible for class members to effectively redress the wrongs done to them in individual litigation.  Even if class members could afford it, individual litigation would be an unnecessary burden on the Court.  Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Defendant AP 11's conduct.  By contrast, the class-action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

80.    Defendant AP 11 represented in lease agreements with Plaintiff and the putative class members that they were required to pay the Disputed Fees as a condition of securing residence at the respective properties and receiving the right to pest- and trash-free premises. The services conditioned upon these fees are basic aspects of suitable living conditions under the warranty of habitability which Plaintiff and the putative class members are guaranteed when entering into a residential lease agreement. Va. Code § 55.1-1200.

81.    Defendant AP 11's lease agreements failed to disclose that Plaintiff and the putative class members were already entitled to the rights that the lease agreement conditions upon payment of the Disputed Fees.  Defendant AP 11 also failed to disclose that Virginia Law obligates the landlord—not the tenant—to provide pest- and trash-free premises.

82.    Additionally, AP 11 misrepresented to Plaintiff and the class members that the Disputed Fees would simply cover—or "reimburse"—pest control and trash collection services, when in reality such fees were designed by Defendants to generate additional profit and were intentionally set by them at a price point far higher than the actual cost of the services.  At the time it had Plaintiff and the putative class members sign their respective lease agreements, AP 11 did not have a present intent to provide the services described in Plaintiff's and the class members' lease agreements at the cost they charged for each fee.

83.    Defendant AP 11 thus affirmatively misrepresented in the lease agreements with Plaintiff and the putative class members that the payment of the Disputed Fees was required to receive the benefit of pest control and trash collection services and/or that such fees would simply cover the actual costs of the described services, when in fact they were designed to generate additional profit for Defendants.

84.    AP 11 willfully and intentionally misrepresented the fact that the payment of additional fees was necessary to obtain such services because they knew that such a practice is unlawful, and it wanted to conceal its violations of Virginia law and to generate additional revenues at its properties.

85.    "The VCPA creates a new, statutory cause of action distinct from and in addition to common law fraud."  *Ballagh v. Fauber Enters.*, 290 Va. 120, 124 (2015) (citing *Owens v. DRS Auto. Fantomworks, Inc.,* 288 Va. 489, 497, 764 S.E.2d 256, 260 (2014) ("[T]he legislative purpose underlying the VCPA was, in large part, to expand the remedies afforded to consumers and to relax the restrictions imposed upon them by the common law.... Therefore, [it] extends considerably beyond fraud.")).  The elements "of the two claims are [therefore] different."  *Id.*

The VCPA applies to *both* misrepresentations and fraudulent acts by landlords in relation to a lease agreement, as outlined in § 59.1-200.  Va. Code § 59.1-199(5).  With respect to misrepresentations under the VCPA, a plaintiff need only show (1) reliance and (2) damages.  *In re Lumber Liquidators Litig.*, No. 1:16-md-2743, 2017 WL 29111681, at *12-13 (E.D. Va. July 7, 2017) (Trenga, J.).  There is no requirement that the plaintiff establish the defendant's knowledge of the falsity or an intent to deceive, though the plaintiff may seek damages for willful violations.  *See id.*

86.    Here, Plaintiff and the putative class members relied on the representation that they were required to pay the Disputed Fees to obtain pest control and trash collection services when they signed their lease agreements and agreed to pay and paid the fees in the amount provided under those agreements.  They also relied on the representation that the fees covered the actual costs to AP 11 of providing the described services.  Had AP 11 disclosed that the landlords at its properties could not collect such fees and were already obligated to provide pest- and trash-free areas, or had it disclosed that the fees were higher than the actual costs of the services being provided, Plaintiff and the putative class members would not have agreed to pay the Disputed Fees, which they believed at were necessary to access the promised services that Defendants were already obligated to provide.

87.    Plaintiff and the putative class members have been damaged by Defendant AP 11's misrepresentations, including through payment of amounts that they believed were necessary to secure their right to pest- and trash-free premises that they were already entitled to under Virginia Law and that were instead retained by Defendants as profit.

23

88.    Defendant AP 11 has thus violated Va. Code § 59.1-200 by, at a minimum, using other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction. Va. Code § 59.1-200(14).

89.    Defendant AP 11's violations were willful.  AP 11 knew at the time it imposed the Disputed Fees that such fees could not be charged under the clear language of Virginia law and the decision of the Virginia Court of Appeals that prohibited it from charging and collecting the fee in return for providing pest control and trash collection services.  AP 11 also wanted to deliberately conceal the scheme, as they knew it violated the VRLTA and that if tenants knew the fees could not be assessed or were in fact for a profit-generating purpose, the tenants would refuse to pay the fees or otherwise organize against their imposition.  AP 11 concealed and willfully misrepresented the true purpose of the Fees for its pecuniary gain, as the fees would help its bottom line and the bottom line of its customers (i.e., the landlords).

90.    Plaintiff and the putative class members are thus entitled to damages for each month in which AP 11 collected, or will collect, the Disputed Fees, including, at a minimum, either: (1) their actual damages or $500 per month, whichever is greater, if AP 11's conduct was not willful; or (2) three times their actual damages or $1,000 per month, whichever is greater, if AP 11's conduct was willful.  Va. Code § 59.1-204.

91.    Plaintiff and the putative class are also entitled to their attorneys' fees and costs in prosecuting this action under Va. Code § 59.1-204.

92.    And Plaintiff and the putative class are entitled to injunctive relief enjoining the ongoing collection of the Disputed Fees under Va. Code §§ 59.1-203(C) and 59.1-205.

WHEREFORE, Plaintiff demands judgment for actual, statutory, and punitive damages against Defendants; injunctive relief; their attorneys' fees and costs; pre- and post-judgment interest at the legal rate; and such other relief the Court considers proper.

**TRIAL BY JURY IS DEMANDED.**

Respectfully submitted,
**PLAINTIFF**

By: ____*/s/ Kristi C. Kelly*_____
Kristi C. Kelly, VSB #72791
Andrew J. Guzzo, VSB #82170
Casey S. Nash, VSB #84261
J. Patrick McNichol, VSB #92699
Matthew G. Rosendahl, VSB #93738
**KELLY GUZZO, PLC**
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7572 – Telephone
(703) 591-0167 – Facsimile
Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com
Email: casey@kellyguzzo.com
Email: pat@kellyguzzo.com
Email: matt@kellyguzzo.com

*Counsel for Plaintiff*