**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | | |
|---|---|---|
| GLORIA TURNAGE, *on behalf of herself and all similarly situated individuals*,<br><br>Plaintiff,<br><br>v.<br><br>AION MANAGEMENT LLC, and AP 11 NORTH LLC,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) | Civil Action No. 3:25-cv-840-REP-MRC |

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff Gloria Turnage, on behalf of herself and all other similarly situated individuals, files this First Amended Class Action Complaint against Defendants AION Management LLC ("AION Management") and AP 11 North LLC ("AP 11"), and alleges as follows:

## PRELIMINARY STATEMENT

1. Over the last decade, businesses have increasingly utilized "junk fees" to boost their profits. Junk fees are commonly defined as "add-on charges that provide little to no value in exchange" for the price. Luke Herrine, *Unfairness, Reconstructed*, 42 Yale J. on Reg. 95, 122 (2025). Businesses use these fees to slowly drive-up the cost on consumers (and the profits for themselves)—often in an unfair, illegal and deceptive manner. As the Federal Trade Commission recently explained, "[m]isleading fees are prohibited," and businesses "can't lie about the fees

you charge."[1] Instead, businesses must "[t]ell the truth when it comes to fee-related information that matters, like what's being charged and why." *Id*.

2. This case arises because Defendant AION Management (a property management company), in collusion with its client, AP 11 North (a landlord), did not tell the truth about certain fees imposed on tenants at the properties it manages throughout the Commonwealth of Virginia. Defendants also charged fees prohibited by Virginia law. Defendants engaged in this scheme to increase their profits while advertising their units at a lower rental price, thereby luring unsuspecting consumers into leases packed with additional fees for services their rental payments are already supposed to guarantee. As multiple reports have now found, this practice has only compounded the rent burden on low- and middle-income Americans, depriving them of the financial mobility needed to advance up the socioeconomic ladder.[2] These additional fees also compound the eviction crisis.

---

[1] Federal Trade Commission, *Getting to the bottom line: The FTC's bipartisan Junk Fees Rule and your business*, available at: https://www.ftc.gov/business-guidance/blog/2024/12/getting-bottom-line-ftcs-bipartisan-junk-fees-rule-your-business.

[2] *See Federal Data Shows Many Virginians are 'Rent Burdened*', Va. Public Radio (Sept. 24, 2025), https://www.wvtf.org/news/2025-09-24/federal-data-shows-many-virginians-are-rent-burdened (reporting based on federal data that "four out of 10 people who are renting in Virginia cannot realistically afford their rent" and descriving Virginia's "outsized eviction rate"); *see also Nearly Half of Renter Households are Cost-Burdened, Proportions Differ by Race*, U.S. Census Bureau (Sept. 12, 2024), https://www.census.gov/newsroom/press-releases/2024/renter-households-cost-burdened-race.html (last visited Oct. 1, 2025)

3. As federal data has shown, these fees add up to create a disproportionate burden on Virginians—particularly low- and middle-income Virginians—that deprives them of funds to pay other expenses, to save for a home, and to move up the socioeconomic ladder.[3]

4. This case arises from Defendants' fraudulent and unlawful conduct in imposing and collecting a $10-per-month "pest control reimbursement" ("Pest Fee"), a $10-per-month "trash reimbursement" ("Trash Fee"), a $10-per-month "Community Fee" ("Community Fee"), and a $4.40 per month "administrative billing fee" for the provision of utilities ("Billing Fee") (collectively, the "Disputed Fees") that Defendants represents as necessary for each tenant to receive safe, habitable, and sanitary dwelling units, and as simply reimbursing the actual costs to it of providing such services, but that are in fact a profit generator that do not cover the services Defendants claims to be covered and are not lawful under Virginia law in any event.

5. Defendants impose these Disputed Fees through form lease agreements that AION Management generates, designs, and determines based on the desired budgetary outcomes of its clients, including AP 11, who ultimately approves the form lease agreement and fees to assess at its property—Plaintiff's apartment complex. AION Management and AP 11 each personally participate in, approve, and decide upon the language of the form lease agreements published to Plaintiff and the putative class members defined below. Upon information and belief, AION Management uses substantially the same lease agreement and utility addendums at

[3] See *Federal Data Shows Many Virginians are 'Rent Burdened*', Va. Public Radio (Sept. 24, 2025), https://www.wvtf.org/news/2025-09-24/federal-data-shows-many-virginians-are-rent-burdened; *Nearly Half of Renter Households are Cost-Burdened, Proportions Differ by Race*, U.S. Census Bureau (Sept. 12, 2024), https://www.census.gov/newsroom/press-releases/2024/renter-households-cost-burdened-race.html (last visited Oct. 1, 2025).

all of the properties it manages in Virginia, with the only difference being the amount of the Disputed Fees charged at each property. The form lease agreements approved and published to Plaintiff and the class members by Defendants contain uniform misrepresentations that are materially indistinguishable from property to property, such that all of the tenants at Virginia properties managed by AION Management are affected in the same manner by its misconduct. For this reason, Plaintiff brings this action not only on her own behalf, but on behalf of other tenants of AION Management properties in Virginia who were charged and paid the same unlawful and deceptive fees.

6. In each of the form lease agreements, Defendants use the utility addendum to represent that each fee is a "utility", which is defined in the VRLTA as " electricity, natural gas, or water and sewer provided by a public service corporation." Va. Code § 55.1-1200. Each utility is separately regulated in the Virginia Code, and the billing allocation is also governed by the VRLTA. Despite the fact that trash, pest control, and common area services are not "utilities", Defendants deceptively assess fees for these services in a utility addendum and describe them as "utilities" that they can pass along to their tenants, all so they can deceptively increase their profits.

7. Further, the uses and benefits of the Pest Fee, Trash Fee, and Community Fee are falsely described by Defendants as covering "service to [the tenant's] dwelling," when in fact the Fees cover services for common area maintenance. Indeed, Defendants' own discovery responses concede that they have no records of any services covered by each Fee being provided to Plaintiff's dwelling. *See* Ex. 1 (Responses to Second Set of Interrogs.). Instead, Defendants' use the Fees to offset costs incurred to service common areas—costs that they have a duty to

bear under Virginia law—and, worse, that are intentionally set to be far higher than even those costs so that Defendants can discretely generate thousands in additional profits each year without increasing the advertised "sticker price" for renting a unit.

8. The intent behind Defendants' scheme is clear: they seek to bait prospective tenants into renting with them for what they think is a fair monthly rental price only to then add additional fees once the prospective tenant has already gone through the application process, paid an application fee, and committed to living at the property.

9. Additionally, defendants were well aware at the time they implemented the Disputed Fees and published their form lease agreement to Plaintiff and the class members that they bore the sole burden of providing pest-free and clean premises, as well as trash receptacles, to their tenants and maintaining the building's common areas in fit condition. Indeed, both VRLTA and the Virginia Court of Appeals have explicitly held that such fees cannot be charged to tenants. *See* Va. Code § 55.1-1220(A) (requiring landlords to, in relevant part, "[m]ake all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition"; "[k]eep all common areas shared by two or more dwelling units of a multifamily premises in a clean and structurally safe condition"; and "provide and maintain appropriate receptacles and conveniences for the collection, storage, and removal of ashes, garbage, rubbish, and other waste incidental to the occupancy of dwelling units and arrange for the removal of the same"); *Parrish v. Vance*, 898 S.E.2d 407, 411–14 (Va. Ct. App. 2024) (holding that a landlord could not shift the burden to deal with insect infestations to their tenant through a lease agreement, because Va. Code. § 55.1-1220(A) provides tenants a warranty of habitability that cannot be waived through an agreement).

10. Defendants were likewise well aware that Virginia law permits them to charge and collect only sufficient service charges to cover its "actual costs of administrative expenses and billing charged to the residential building owner, manager, or operator by a third-party provider of such services . . . ." Va. Code 55.1-1212(C)-(D). Yet, upon information and belief, they intentionally set the Billing Fee at a rate far higher than the actual cost to them of administering the utility billing program at Plaintiff's apartment complex and the other properties managed by AION in Virginia. Again, Defendants do so willfully and despite their knowledge of Virginia law for the purpose of adding additional revenue streams under the guise of "services" to their tenants.

11. Further adding to the deceptive nature of the lease conditions, Defendants charge a flat rate for the Disputed Fees when in fact they do not incur expenses commensurate with the Fee.

12. Indeed, Defendants' discovery responses have confirmed that they have no records of pest control services being provided to Plaintiff's unit, even though she has paid $10 a month for the service as a supposed "reimbursement" of Defendants' costs. And Plaintiff has to take her own trash to a outdoor dumpster at her apartment complex, while she and her co-tenants pay almost $12,000 a month to Defendants for the privilege of doing so. And while collectively paying almost $12,000 a month for a "Community Fee" service "to [their] dwelling," as the form lease agreements claim, Plaintiff and her co-tenants in fact receive no services to their dwelling—or even common areas—that cost anywhere close to that amount.

13. Instead of providing the services that Defendants claim in their leases are covered by the Disputed Fees, they are junk fees that deceptively drive up the cost of rent. Defendants

use the fees to deceptively pocket money from tenants, while shifting the burden of providing a pest-free, trash-free, sanitary, and habitable living space and common areas onto their tenants.

14. Thus, Defendants engaged in and continue to engage in and profit from a scheme that induces the tenants in the properties AION manages into a residential lease that misrepresents their rights to certain services related to the warrant of habitability—guaranteed under Virginia law—and forces them to waive such rights. They also lure Plaintiff and similarly situated tenants into paying thousands in additional fees each year for little to none of the promised value in return. Living with the harm of having paid, and continuing to pay, Defendants' deceptive monthly fees, Plaintiff is forced to bring this lawsuit to seek relief for Defendants' ongoing violations of the Virginia Consumer Protection Act ("VCPA") and Virginia Residential Landlord Tenant Act ("VRLTA").

## JURISDICTION AND VENUE

15. This Court has jurisdiction over all Counts under 28 U.S.C. § 1332(d) because Plaintiff and putative class members (Virginia) and Defendants (Delaware and New York) are each citizens of different states and the amount in controversy exceeds $5,000,000 exclusive of interest and costs. Under 28 U.S.C. § 1332(d)(6), "the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000." The test for determining whether the amount in controversy is "the pecuniary result to either party which [a] judgment would produce." *Dixon v. Edwards,* 290 F.3d 699, 710 (4th Cir. 2002) (quoting *Gov't Employees Ins. Co. v. Lally,* F.2d 568, 569 (4th Cir.1964)). Statutory damages "are properly includable in the calculation of the jurisdictional amount," including increased damages for willful violations. *See Bartnikowski v. NVR, Inc.*, 307 F. App'x

730, 735 (4th Cir. 2009). Attorney's fees may also be included in the amount in controversy when recoverable under the asserted statute. *Missouri State Life Ins. Co. v. Jones,* 290 U.S. 199, 202 (1933) (holding that where a state statute provides for the award of attorney's fees, those fees can be considered as part of the amount in controversy).

16. Here, AION Management has at least 3,340 units among its six Virginia properties, meaning that there are at least 3,340 putative class members (before counting any co-tenants in each unit) in Count One, which seeks relief for all persons who signed a lease with landlords of Virginia properties managed by AION Management.

17. In Count One, which alleges violations of the VCPA, Plaintiff and each class member are entitled to at least $1,000 per month for each month that AION Management willfully collected the Disputed Fees, which, upon information belief, have been charged in full or in part for a least two years.[4] This entitles Plaintiff and the class members to at least a total of $24,000 per class member as of the date of this Complaint, or $80,160,000 ($24,000 x 3,340 class members) for the class, which will continue to increase by $1,000 per class member each month that this case proceeds and additional Disputed Fees are collected. Va. Code § 59.1-204; *see Broglie v. MacKay-Smith*, 541 F.2d 453, 455 (4th Cir. 1976) (holding future damages may be included in this calculation when "'a right to future payments. . .will be adjudged in the present suit.'" (quoting 1 Moore's Federal Practice P 0.93(5. 3) at 904)); *Goff v. Jones*, 47 F. Supp. 2d

---

[4] The General Assembly has confirmed in a bill passed by both the House and the Senate this year that the VCPA awards statutory damages "per violation," which is "declarative of existing law." *See* Ex. 2 (SB229) at lines 179-186, 208-209. A violation in turn occurs whenever a supplier commits a prohibited act "in connection with a consumer transaction." Va. Code § 59.1-200. Each monthly payment of the Disputed Fees by a consumer is a separate "transaction" giving rise to a separate violation for which damages may be separately awarded.

692, 695 (E.D. Va. 1999) (Lee, J.) (future damages could be considered in deciding amount in controversy). This is before considering the attorney's fees that the Court could award under the VCPA. Va. Code § 59.1-204(B).

18. Alternatively, as the VCPA entitles each "person" injured by a supplier's conduct to recover statutory or actual damages, there are at least 5,500 individual tenants in the class defined in Count One. Thus, even providing a conservative damages recovery of only $1,000 per person under the VCPA, which represents only a single willful violation of the Act for only one of the Disputed Fees, the total damages would be at least $5.5 million. Even if the fact finder found the violations with respect to each fee not willful, moreover, the total damages per class member would be at least $2,000 ($500 per disputed fee), for a total recovery of $11,000,000.

19. The Court also has jurisdiction over all other claims under at least 28 U.S.C. § 1367 because they each arise from the same case or controversy as Count One.

20. Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District and Division, where Plaintiff resides and property owned and/or managed by Defendants is located.

**PARTIES**

21. Plaintiff Gloria Turnage is a natural person residing in this Division and District.

22. Defendant AION Management is a limited liability company incorporated in Delaware with its principal place of business in New York.

23. Defendant AION Management is a "supplier" under the VCPA because it is a "seller, lessor . . . or professional . . . who advertises, solicits, or engages in consumer

transactions"—namely, the leasing of apartments for personal, family, or household purposes. Va. Code § 59.1-198. AION Management is the entity that collects the Pest Fees, and it is liable for its misrepresentations to Plaintiffs and the putative class members that they owe, and that it can collect, such fees.

24. AION Management is the entity that collects the Disputed Fees, and it is liable for its misrepresentations to Plaintiff and the putative class members that they owe, and that it can collect, such fees. AION Management is also individually liable for its own misconduct in deciding to charge, charging, and collecting the Disputed Fees, and in determining and publishing the language in the form lease agreements that deceives Plaintiff and the putative class members.

25. And as explained above, AION Management decides the terms of the form leases published to Virginia consumers, including Plaintiffs, and its employees are the ones who sign the lease agreements, including the lease agreements with Plaintiff in this case.

26. AION Management's direct role in deciding on the leases that are ultimately published to consumers—as well as which Fees are collected—is confirmed by the fact that it provides addenda in each form lease that are prepared on AION Management letterhead and represent that AION Management is the author of the addendum.

27. AION Management is also individually liable for misrepresentations it made ostensibly on behalf of its landlord clients. *See Stitt v. Nautilus Enters., Inc.*, 17 Va. Cir. 150, at *2 (1989) (finding that officers and agents of a corporate entity can be held liable under the VCPA for their own misconduct).

28. Defendant AP 11 North LLC is a limited liability company incorporated in Delaware with its principal place of business in New York.

29. AP 11 is a "supplier" under the VCPA because it is a "seller, lessor . . . or professional . . . who advertises, solicits, or engages in consumer transactions"—namely, the leasing of apartments for personal, family, or household purposes. Va. Code § 59.1-198. AP 11 is liable for its misrepresentations to Plaintiffs and the putative class members that they owe, and that it can collect, such fees.

30. AP 11 is also a "landlord" as defined by the VRLTA, as it is the owner and lessor of the dwelling units at the Pointe at River City apartments, of which Ms. Turnage is a tenant.

## FACTS

### *Plaintiff Turnage's Lease Agreement*

31. Plaintiff Turnage is a resident of Henrico, Virginia.

32. She resides at the Pointe at River City apartments, which is owned by AP 11 and managed and operated by AION Management.

33. Ms. Turnage has lived in the Pointe at River City for several years.

34. For several years, and within the last two years, Ms. Turnage's lease agreements with AP 11, which were drafted and published to her by AION Management and approved by AP 11, have included provisions requiring her to pay a $10-per-month Pest Fee, a $10-per-month Trash Fee, a $10-per-month Community Fee, and a "Monthly Administrative Billing Fee" of $4.40-5.00 per month.

35. Defendants disclosed the fees to Plaintiff and the class members in form lease agreements that included a form "Utility and Services Addendum," which claims that the Pest Fee, Trash Fee, and Community Fee are "utilities."

36. In the form Utility and Services Addendum, Defendants state that Plaintiff and the class members must pay the Disputed Fees to cover "service to [their] dwelling." The form Addendum further states with respect to each Disputed Fee that the flat fee merely covers an "allocat[ion]" of the "bills . . . billed by the service provider to [Defendants]." And the Addendum later states that the flat fees are a "fair and reasonable" estimation of the "total utility consumption for [each tenant]."

37. Pursuant to the terms of these lease agreements, each month in at least the past two years, AION Management has charged and collected from Ms. Turnage and the putative class members in Count One what it describes on their tenant ledgers as a "pest control reimbursement," which is the same thing as the $10-per-month Pest Fee; a "trash reimbursement," which is the $10-per-month Trash Fee; "amenity income," which, upon information and belief, is the $10-per-month "Community Fee; and a "billing fee" of at least $4.40 per month, which is the same Billing Fee.

***Defendants' False Statements in the Lease and Ledgers***

38. Defendants' falsely represent that the Community Fee, Trash Fee, and Pest Fee merely cover utilities to Ms. Turnage and the putative class members.

39. Utilities are generally allowed to be charged to tenants because either they are directly billed to the tenant by the utility company or the service is sub-metered by the utility company. Additionally, the VRLTA does provide for ratio billing of a utility if the requirements

in Va. Code 55.1-1212, which only allows a landlord to charge the tenant for its actual costs. In other words, landlords cannot profit from the assessment of utilities.

40. Despite this, Defendants falsely represent a $10.00 monthly charge for "trash service to your dwelling" as a utility. *See* Ex. 3 (Utility Addendum).

41. Defendants also falsely represent a $10.00 monthly charge for "pest control service to your dwelling" as a utility. *See id.*

42. Defendants also falsely represent a $10.00 monthly charge for "community fee service to your dwelling" as a utility. *See id.*

43. Each month when Defendants bill Plaintiff and the other tenants for each fee, they again falsely imply that there was a trash service, pest control service and community service provided to their dwelling, which is false.

44. Indeed, according to Defendants' own discovery responses, they have no records of monthly pest control services to Plaintiff or any other tenant's dwelling. *See* Ex. 1 (Resps. to 2d Set of Interrogs.) ("Defendant does not maintain records as to specific dates of treatment for Plaintiff's unit . . . .").

45. Defendants also do not provide any trash service to Plaintiff's or any other tenant's dwelling. *See id.* ("No trash service is provided specifically to Plaintiff's individual unit.").

46. And Defendants to not perform a "community fee" service to Plaintiff's or any other tenant's dwelling. *See id.* ("None of these services were provided specifically to Plaintiff's unit, as they represented services enjoyed by all tenants at the property.").

47. Despite this lack of services to the dwelling, Defendants instead chose to assess fees for purported services to their tenants' "dwellings" increase profits from tenants has resulted in their falsely claiming these services as utilities that are provided to the tenants when they are not.

***Defendants' Unlawful and Deceptive Fees***

48. AION Management, through its employees, is responsible for providing the leases to Plaintiff and the putative class members in Count One, and for collecting all amounts allegedly owed under their leases. Upon information and belief, AION Management is responsible for drafting the terms of the form lease agreements used at all of its properties, including Plaintiff's leases, which misrepresent to tenants like Plaintiffs that it can collect the Pest Fee at issue in this lawsuit and that the fees are intended for services that AION Management never intended to provide or to provide at the actual cost to them. AION Management is also directly responsible for publishing to tenants monthly invoices and other correspondence claiming that such fees are duly owed under the terms of their lease agreements and are merely a "reimbursement" for pest control services, when that is not the case.

49. Upon information and belief, and based on industry practice, AION Management also decides the fees to assess at each property, and the amount of those fees, based on surveys of competitor properties. In other words, AION Management decides what fees to assess and the amount to charge based on what the market will allow it to charge, not on its actual costs of providing the disclosed services. AION Management then seeks and obtains approval from each landlord, including AP 11, to assess the fees.

50. Although Defendants claim that Plaintiffs and others lawfully owed the Disputed Fees, Virginia law prohibits Defendants from collecting each Fee.

51. Indeed, the assessment of the Pest Fee, Trash Fee, and Community Fee directly violates Virginia Law, which prohibits landlords from creating lease provisions that waive the warranty of habitability established by Va. Code § 55.1-220(A). *See Parrish v. Vance*, 898 S.E.2d 407, 411–14 (Va. Ct. App. 2024) (holding that a landlord could not shift the burden to deal with insect infestations to their tenant through a lease agreement, because Va. Code. § 55.1-220(A) provides tenants a warranty of habitability that cannot be waived through an agreement).

52. Here, Defendants require their tenants to pay a monthly fee to cover pest-control costs (the Pest Fee), trash receptacles (the Trash Fee), and common area maintenance (the Community Fee). The imposition of these Fees violates the Virginia Residential Landlord Tenant Act, which states that the "landlord shall", in relevant part: (1) "[m]ake all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition; (2) "[k]eep all common areas shared by two or more dwelling units of a multifamily premises in a clean and structurally safe condition"; (3) "[m]aintain in good and safe working order and condition all electrical, plumbing, sanitary, heating, ventilating, air-conditioning, and other facilities and appliances, including elevators, supplied or required to be supplied by him"; (4) "[p]rovide and maintain appropriate receptacles and conveniences for the collection, storage, and removal of ashes, garbage, rubbish, and other waste incidental to the occupancy of dwelling units and arrange for the removal of same." Va. Code § 55.1-1220(A).

53. Although a landlord and tenant may agree that *the tenant*, as an individual, "[k]eep all common areas . . . in a clean and structurally safe condition," moreover, Virginia law

does not permit a landlord to shift its own costs of doing so onto the tenant—as Defendants have done here.

54. By shifting the burden to provide these basic necessities required under the statutory warranty of habitability, Defendants not only violated the VRLTA but also deceptively misrepresented to Plaintiff and the class members that they could lawfully assess such fees and that the payment of such fees was required to obtain what the law already guarantees, in violation of the VCPA. Va. Code § 59.1-200(14).

55. Likewise, although charging a monthly Billing Fee for the provision of utilities to Plaintiff's and the putative class members' apartment complexes, upon information and belief, Defendants in fact uses the Billing Fee to generate additional profit and does not cover the actual costs to it charged by the third-party utility providers.

56. Indeed, considering the number of units at Plaintiff's apartment complex (1184), alone, Defendants collect over $5,000 a month in utility service fees, ***or nearly $63,000 a year***, which is supposed to cover only the actual cost to it of billing the utilities. Va. Code § 55.1-1212. Upon information and belief, the cost to Defendants of administering the utility billing at Plaintiff's and the other class members' apartment complexes is in fact far less than the amounts charged to Defendants.

57. Despite the explicit obligations of Virginia law, of which they were well aware, Defendants knowingly forced Plaintiff and all other similarly situated tenants to waive their right to the warranty of habitability guaranteed by the Virginia Residential Landlord Tenant Act and knowingly charged far more than the actual cost of administering the billing of utilities, as the VRLTA expressly prohibits. Defendants shifted the obligation to maintain a pest- and trash-free

premises and well-maintained common areas onto its tenants and profited from the imposition of fees that they had no right to charge.

58. Regardless of the legality of the Pest Fee, Trash Fee, and Community Fee under the VRLTA, moreover, the assessment of such fees is also deceptive for the independent reason that Defendants intentionally misrepresents the purpose and use of such Fees, which are not intended—and were never intended—to simply cover the costs of the pest control, trash collection, and "community" services to each "dwelling," as each form lease claims, but were in fact an additional profit generator that allowed Defendants to advertise lower rent prices before luring unsuspecting consumers into leases packed with additional, unlawful fees that generated profit for it and its landlord clients.

59. Although charging Plaintiff and the tenants at AION's Virginia properties a $10-per-month Pest Fee, a $10-per-month Trash Fee, and a $10-per-month Community Fee, upon information and belief and based on information produced thus far in discovery, the actual costs of those services is far less than the amount of revenue generated by the Fee.

60. Indeed, Defendants have no records of any pest control services to Plaintiff's unit, despite her paying a monthly fee to supposedly "reimburse" the pest control vendor for service to her "dwelling." *See* Ex. 1.

61. Likewise, as Defendants have now confirmed, Plaintiff has not received any trash collection services directly to her unit. *See* Ex. 1. Instead, she must take all of her own trash to a common dumpster on the property, which does not cost the almost $12,000 per month that Defendants collect from the Trash Fee at Plaintiff's apartment complex.

62. Upon information and belief, the same is true of the other AION Management properties in Virginia: the costs of covering pest control, trash receptacles, and amenities is far less than the amounts collected by AION Management from the tenants at each respective property.

63. Upon information and belief, Defendants instead imposed the Disputed Fees for the purpose of generating additional profit and did not intend—and never intended at the time they had Plaintiff and the class members execute their lease agreements—to provide the promised services for the amount charged or in the manner described (i.e., to the tenants' dwelling units). Instead, Defendants intentionally charged fees that were far higher than any costs to them of providing the services so that they could generate additional profit and offset costs they had the sole burden to bear for their own pecuniary gain.

64. Just considering the number of units at Plaintiff's apartment complex (1,184), alone, for example, Defendants collect almost $12,000 a month in pest fees, or over $142,080 a year, which they claim simply reimburses the pest control costs incurred by the complex. Upon information and belief, the actual cost of these services is far lower, including because services are rarely, if ever, provided within individual units.

65. The cost of paying for a common dumpster at Plaintiff's complex is also far less than the $142,080 that Defendants collect and represent to Plaintiff and the class members as merely as "trash reimbursement." Far from simply reimbursing the cost of a dumpster, the Trash Fee in fact generates additional profits for Defendants for services that they are already obligated to provide under Virginia law as a condition of Plaintiff's and her co-tenants' payment of monthly rent.

66. And the cost of providing amenities and maintaining common areas at Plaintiff's complex is also far less than the $142,080 Defendants collect each year at Plaintiff's apartment complex.

67. Defendants' misrepresentations of the Disputed Fees were willful. Defendants stood to rake in thousands in additional revenue and cost savings from tenants to cover costs that should have been covered by their rent and which were the landlords' sole burden to bear under Virginia law. Defendants also profited from the imposition of the Disputed Fees, as the revenues generated by such fees exceeded the actual costs of providing the alleged services that they covered and, at a minimum, offset costs that Plaintiff's and her co-tenants' rent was supposed to cover anyway. Defendants also have an incentive to maintain a lower "sticker price" when advertising monthly rent at their properties so as to lure unsuspecting prospective tenants into lease agreements that they know are packed with additional fees. Defendants thus had a pecuniary incentive to represent to Plaintiff and the putative class members that such fees were collectible, when they explicitly were not under Virginia law.

68. Upon information and belief, Defendants were also aware of the *Parrish* decision when it was published through its participation in the National Apartment Association, which sends out notices to property managers and landlords about changes in the law. Yet, Defendants chose to ignore the decision and did not make any changes to the assessment of fees at its properties, without a good faith basis for doing so.

69. Defendants knowingly forced Plaintiff and their other tenants to assume the landlords' obligations to maintain safe and habitable premises and profited from the imposition

of Disputed Fees that they had no right to charge. They did so solely for their pecuniary gain and without regard to this known harm to their tenants.

**<u>COUNT ONE</u>**
**VIOLATION OF VCPA, Va. Code § 59.1-200**
**(Class and Individual Claim by Plaintiff against Defendant AION Management)**

70. Plaintiff incorporates each of the preceding allegations.

71. Under Federal Rule of Civil Procedure 23, Plaintiff brings this action on behalf of the following class of which she is a putative class member:

> All persons who: (1) executed a lease within the past two years (2) at a property managed by Defendant AION Management and located in Virginia under which they (3) paid any of the Disputed Fees.

72. **<u>Numerosity</u>. Fed R. Civ. P. 23(a)(1)**. Upon information and belief, Plaintiff alleges that the class members are so numerous that joinder of all is impractical. There are at least 3,340 class members based on the number of units at AION Management's Virginia properties. The class members' names and addresses can be identified through discovery, and the class members may be notified of the pendency of this action by published or mailed notice.

73. **<u>Predominance of Common Questions of Law and Fact</u>. Fed R. Civ. P. 23(a)(2) and Fed. R. Civ. P. 23(b)(3).** Common questions of law and fact exist as to all putative class members, and there are no factual or legal issues that differ between them. These questions predominate over the questions affecting only individual class members. The principal issues include: (1) whether Defendant AION Management misrepresented to Plaintiff and the putative class members in their lease agreements that payment of the Disputed Fees was necessary to secure their right to pest- and trash-free premises; (2) whether Defendant AION Management misrepresented to Plaintiff and the putative class members that the Disputed Fees

would simply cover the costs of providing pest control and a common trash receptacle when in fact the fees each generated profits for AION Management; (3) whether Defendant AION Management's violations were willful; and (4) the appropriate amount of damages for Defendant AION Management's violations.

74. **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of each putative class member. In addition, Plaintiff is entitled to relief under the same causes of action as the other putative class members. All claims are based on the same facts and legal theories.

75. **Adequacy of Representation. Fed R. Civ. P. 23(a)(4).** Plaintiff is an adequate class representative because her interests coincide with, and are not antagonistic to, the putative class members' interests. She has retained experienced and competent counsel; she intends to continue to prosecute this action vigorously; she and her counsel will fairly and adequately protect the interests of the members of the class; and she and her counsel have no interest that might cause them to not vigorously pursue this action.

76. **Superiority. Fed R. Civ. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to the other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for class members to effectively redress the wrongs done to them in individual litigation. Even if class members could afford it, individual litigation would be an unnecessary burden on the Court. Furthermore, individualized litigation presents a potential for inconsistent or contradictory

judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Defendant AION Management's conduct. By contrast, the class-action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

77. Defendant AION Management violated the VCPA, Va. Code § 59.1-200, by, at a minimum:

a. Representing to Plaintiff and the putative class members that they owe a Pest Fee, Trash Fee, and/or Community Fee, when in fact such services are guaranteed and unwaivable under the Virginia warranty of habitability as part of their right to a safe and habitable premises and clean and orderly common spaces;

b. Representing to Plaintiff and the class members that they can charge and assess a utility Billing Fee of $4.40 per resident per month, when in fact AION Management knew at the time it assessed the fee that it generated far more than the actual costs of administration for the third-party utility service provider;

c. Representing to Plaintiff and the class members that the Pest Fee, Trash Free, and/or Community Fee was merely for the cost of "service to [their] dwelling" units, when in fact AION Management knew at the time it made such representation that each Fee did not cover services to the dwelling but in fact covered common area maintenance, trash collection and pest treatments;

d. Representing to Plaintiff and the putative class members that the Pest Fee, Trash Fee, and/or Community Fee was merely a flat rate "allocat[ion]" of the "bills . . . billed by the service provider to us" for each service, when in fact AION Management knew at the time it made this representation that it each Fee was set not based on the actual costs of the services but based on the maximum possible profit it could generate from each Fee based on surveys of market competitors;

e. Representing to Plaintiff and the putative class members that the Pest Fee, Trash Fee, and/or Community Fee were a "fair and reasonable" estimation of the costs of each service, when in fact AION Management knew at the time it made this representation that it each Fee was set not based on the actual costs of the services but based on the maximum possible profit it could generate from each Fee based on surveys of market competitors;

f. Representing that the Pest Fee, Trash Free, and/or Community Fee merely cover certain services—i.e., have certain uses and benefits—when in fact they are specifically set by AION Management at prices far higher than the actual costs of those services and are designed to benefit only AION Management and its landlord clients;

g. Representing that the Pest Fee, Trash Fee, and Community Fee are merely "utilities" that may be passed on to the tenants under Virginia law, when in fact that is not the case.

78. The above affirmative misrepresentations and material omissions constitute, at a minimum, violations of Va. Code 59.1-200(5) and (6), insofar as they misrepresent that the goods and services provided by the fees have certain qualities, characteristics, uses or benefits, or are of a particular standard, quality, grade, style, or model. They also constitute a "deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction," in violation of Va. Code § 59.1-200(14).

79. The above misrepresentations and material omissions are not an aspect of a consumer transaction subject to the Virginia Residential Landlord Tenant Act, as the VRLTA does not cover the conduct at issue—i.e., making misrepresentations in lease agreements—with respect to property managers like AION Management.

80. "The VCPA creates a new, statutory cause of action distinct from and in addition to common law fraud." *Ballagh v. Fauber Enters.*, 290 Va. 120, 124 (2015) (citing *Owens v. DRS Auto. Fantomworks, Inc.,* 288 Va. 489, 497, 764 S.E.2d 256, 260 (2014) ("[T]he legislative purpose underlying the VCPA was, in large part, to expand the remedies afforded to consumers and to relax the restrictions imposed upon them by the common law.... Therefore, [it] extends considerably beyond fraud.")). The elements "of the two claims are [therefore] different." *Id.* The VCPA applies to *both* misrepresentations and fraudulent acts by landlords in relation to a lease agreement, as outlined in § 59.1-200. Va. Code § 59.1-199(5). With respect to misrepresentations under the VCPA, a plaintiff need only show (1) reliance and (2) damages. *In re Lumber Liquidators Litig.*, No. 1:16-md-2743, 2017 WL 29111681, at *12-13 (E.D. Va. July 7, 2017) (Trenga, J.). There is no requirement that the plaintiff establish the defendant's

knowledge of the falsity or an intent to deceive, though the plaintiff may seek damages for willful violations. *See id.*

81. Here, Plaintiff and the putative class members relied on the representation that they were required to pay the Disputed Fees when they signed their lease agreements and agreed to pay and paid the fees in the amount provided under those agreements. Plaintiff and the class members would not have paid the Disputed Fees but for Defendants' representation that they were owed and that they had certain uses and benefits.

82. Plaintiff and the putative class members have been damaged by Defendant AION Management's misrepresentations and material omissions, including through payment of the Disputed Fees in reliance on Defendants' representation that they were owed and would have certain uses and benefits.

83. Defendant AION Management's violations were willful. AION Management knew at the time it imposed the Disputed Fees that such fees could not be charged under the clear language of Virginia law and the decision of the Virginia Court of Appeals that prohibited it from charging and collecting the fee in return for providing pest control services and maintaining common spaces in good condition. AION Management also wanted to deliberately conceal the scheme, as it knew the fees violated the warranty of habitability imposed on landlords and that if tenants knew the fees could not be assessed or were in fact for a profit-generating purpose, the tenants would refuse to pay the fees or otherwise organize against their imposition. AION Management concealed and willfully misrepresented the true purpose of the Fees for its pecuniary gain, as the fees would help its bottom line and the bottom line of its clients (i.e., the landlords).

84. Plaintiff and the putative class members are thus entitled to damages for each month in which AION Management collected, or will collect, the Disputed Fees, including, at a minimum, either: (1) their actual damages or $500 per month, whichever is greater, if AION Management's conduct was not willful; or (2) three times their actual damages or $1,000 per month, whichever is greater, if AION Management's conduct was willful. Va. Code § 59.1-204.

85. Plaintiff and the putative class are also entitled to their attorneys' fees and costs in prosecuting this action under Va. Code § 59.1-204.

86. And Plaintiff and the putative class are entitled to injunctive relief enjoining the ongoing collection of the Disputed Fees under Va. Code §§ 59.1-203(C) and 59.1-205.

## COUNT TWO
## VIOLATION OF VRTLA, Va. Code § 55.1-1220
## (Class and Individual Claim by Plaintiff against Defendant AP 11 North)

87. Plaintiff incorporates each of the preceding allegations.

88. Under Federal Rule of Civil Procedure 23, Plaintiff brings this action on behalf of the following class of which she is a putative class member:

> All persons who: (1) executed a lease with AP 11 North LLC under which they (2) paid any of the Pest Fee, Trash Fee, and/or Community Fee.

89. **Numerosity. Fed R. Civ. P. 23(a)(1).** Upon information and belief, Plaintiff alleges that the class members are so numerous that joinder of all is impractical. There are at least 1,184 class members based on the number of units at Plaintiff's apartment complex. The class members' names and addresses can be identified through Defendants' and third-parties' internal business records, and the class members may be notified of the pendency of this action by published or mailed notice.

90. **<u>Predominance of Common Questions of Law and Fact</u>. Fed R. Civ. P. 23(a)(2) and Fed. R. Civ. P. 23(b)(3).** Common questions of law and fact exist as to all putative class members, and there are no factual or legal issues that differ between them. These questions predominate over the questions affecting only individual class members. The principal issues include: (1) whether AP 11 is subject to the VRLTA; (2) whether AP 11 violated Va. Code § 55.1-1220 by evading its obligation to maintain a pest- and trash-free premises and forcing tenants to waive the warrant of habitability through the lease agreement; and (3) the appropriate amount of damages for AP 11's conduct.

91. **<u>Typicality.</u> Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of each putative class member. In addition, Plaintiff is entitled to relief under the same causes of action as the other putative class members. All claims are based on the same facts and legal theories.

92. **<u>Adequacy of Representation.</u> Fed R. Civ. P. 23(a)(4).** Plaintiff is each an adequate class representative because their interests coincide with, and are not antagonistic to, the putative class members' interests. She has retained experienced and competent counsel; she intends to continue to prosecute this action vigorously; she and her counsel will fairly and adequately protect the interests of the members of the class; and she and her counsel have no interest that might cause them to not vigorously pursue this action.

93. **<u>Superiority.</u> Fed R. Civ. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to the other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would

prove burdensome and expensive. It would be virtually impossible for class members to effectively redress the wrongs done to them in individual litigation. Even if class members could afford it, individual litigation would be an unnecessary burden on the Court. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by AP 11's conduct. By contrast, the class-action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

94. AP 11 violated Va. Code § 55.1-1220 by forcing tenants to waive the warranty of habitability through the Pest Fee, Trash Free, and/or Community Fee included in the lease agreement.

95. Virginia law prohibits landlords from shifting the burden to address pest infestations or maintain sanitary and habitable (including trash-free) living conditions to the tenant, because the warranty of habitability is an unwaivable guarantee under Va. Code § 55.1-220(A). *See Parrish v. Vance*, 898 S.E.2d 407, 411–14 (Va. Ct. App. 2024).

96. AP 11's demand that its tenants pay a Pest Fee, Community Fee, and/or Trash Fee is therefore a violation of the VRLTA.

97. Due to AP 11's violations of the VRLTA, Plaintiff is entitled, individually and on behalf of the class, to her damages under Va. Code. § 55.1-1259, including, at minimum, the Disputed Fee payments she and the putative class members have made thus far and will make during the pendency of the lawsuit. Plaintiff and the putative class are also entitled to an injunction enjoining collection of the Disputed Fees into the future.

**COUNT THREE**
**VIOLATION OF VRTLA, Va. Code § 55.1-1212**
**(Class and Individual Claim by Plaintiff against Defendants)**

98. Plaintiff incorporates each of the preceding allegations.

99. Under Federal Rule of Civil Procedure 23, Plaintiff brings this claim against Defendant AION Management on behalf of the following class of which she is a putative class member (the "AION Billing Fee Class"):

> All persons who: (1) executed a lease a property managed by Defendant AION Management and located in Virginia under which they (2) paid a Billing Fee.

100. Under Federal Rule of Civil Procedure 23, Plaintiff further brings this claim against Defendant AP 11 on behalf of the following subclass of which she is a putative class member (the "AP 11 Billing Fee Subclass"):

> All persons who: (1) executed a lease within the past two years with AP 11 under which they (2) paid a Billing Fee.

101. **Numerosity. Fed R. Civ. P. 23(a)(1).** Upon information and belief, Plaintiff alleges that the class members are so numerous that joinder of all is impractical. There are at least 3,340 class members in the AION Billing Fee Class and 1,184 class members in the AP 11 Billing Fee Subclass. The class members' names and addresses can be identified through Defendants' and third-parties' internal business records, and the class members may be notified of the pendency of this action by published or mailed notice.

102. **Predominance of Common Questions of Law and Fact. Fed R. Civ. P. 23(a)(2) and Fed. R. Civ. P. 23(b)(3).** Common questions of law and fact exist as to all putative class members, and there are no factual or legal issues that differ between them. These questions predominate over the questions affecting only individual class members. The

principal issues include: (1) whether AP 11 and/or AION Management are subject to the VRLTA; (2) whether Defendants violated Va. Code § 55.1-1212 by charging to tenants more than the actual costs of administrative and billings charged to the respective owners of the properties at which the fees were assessed; and (3) the appropriate amount of damages for Defendants' conduct.

103. **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of each putative class member. In addition, Plaintiff is entitled to relief under the same causes of action as the other putative class members. All claims are based on the same facts and legal theories.

104. **Adequacy of Representation. Fed R. Civ. P. 23(a)(4).** Plaintiff is each an adequate class representative because their interests coincide with, and are not antagonistic to, the putative class members' interests. She has retained experienced and competent counsel; she intends to continue to prosecute this action vigorously; she and her counsel will fairly and adequately protect the interests of the members of the class; and she and her counsel have no interest that might cause them to not vigorously pursue this action.

105. **Superiority. Fed R. Civ. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to the other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for class members to effectively redress the wrongs done to them in individual litigation. Even if class members could afford it, individual litigation would be an unnecessary burden on the Court.

Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by AP 11's conduct. By contrast, the class-action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

106. Defendants violated the VRLTA by assessing on tenants, pursuant to form lease agreements, a Monthly Administrative Billing Fee that covered more than the actual cost of the billing administration to the respective owners of the apartment complexes managed by AION Management, as prohibited by Va. Code § 55.1-1212, which states:

> The owner, manager, or operator of the residential building may charge and collect from the tenant additional service charges, including monthly billing fees, account set-up fees, or account move-out fees, to cover the actual costs of administrative expenses and billings charged to the residential building owner, manager, or operator by a third-party provider of such services, provided that such charges are agreed to by the residential building owner and the tenant in the rental agreement or lease.

107. Upon information and belief, the amounts assessed and collected by Defendants from Plaintiff and the class members is far more than "the actual costs of administrative expenses and billings charged to the residential building owner" at each property managed by AION Management, including AP 11.

108. Due to Defendants violations of the VRLTA, Plaintiff is entitled, individually and on behalf of the class members in the AION Billing Fee Class (with respect to AION Management) and AP 11 Billing Fee Subclass (with respect to AP 11), to her damages under Va. Code. § 55.1-1259, including, at minimum, the Billing Fee payments she and the putative class members have made thus far and will make during the pendency of the lawsuit. Plaintiff

and the putative class are also entitled to an injunction enjoining collection of the Billing Fee at amounts higher than the actual costs of the administrative expenses into the future.

**<u>COUNT FOUR</u>**
**VIOLATION OF VCPA, Va. Code § 59.1-200**
**(Class and Individual Claim by Plaintiff against the Defendant AP 11 North LLC)**

109. Plaintiff incorporates the preceding allegations.

110. Under Federal Rule of Civil Procedure 23, Plaintiff brings this action on behalf of the same putative class as Count Two, of which she is a member.

111. **<u>Numerosity</u>. Fed R. Civ. P. 23(a)(1)**. Upon information and belief, Plaintiff alleges that the class members are so numerous that joinder of all is impractical. There are at least 1,184 class members. The class members' names and addresses can be identified through discovery, and the class members may be notified of the pendency of this action by published or mailed notice.

112. **<u>Predominance of Common Questions of Law and Fact</u>. Fed R. Civ. P. 23(a)(2) and Fed. R. Civ. P. 23(b)(3).** Common questions of law and fact exist as to all putative class members, and there are no factual or legal issues that differ between them. These questions predominate over the questions affecting only individual class members. The principal issues include: (1) whether Defendant AP 11 misrepresented to Plaintiff and the putative class members in their lease agreements that payment of the Disputed Fees were necessary to secure their right to pest- and trash-free premises; (2) whether AP 11 misrepresented to Plaintiff and the putative class members that the Disputed Fees would simply cover the costs of providing pest control and a common trash receptacle, when in fact the fees

each generated profits for Defendants; (3) whether AP 11's violations were willful; and (4) the appropriate amount of damages for AP 11's violations.

113. **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of each putative class member. In addition, Plaintiff is entitled to relief under the same causes of action as the other putative class members. All claims are based on the same facts and legal theories.

114. **Adequacy of Representation. Fed R. Civ. P. 23(a)(4).** Plaintiff is an adequate class representative because her interests coincide with, and are not antagonistic to, the putative class members' interests. She has retained experienced and competent counsel; she intends to continue to prosecute this action vigorously; she and her counsel will fairly and adequately protect the interests of the members of the class; and she and her counsel have no interest that might cause them to not vigorously pursue this action.

115. **Superiority. Fed R. Civ. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to the other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for class members to effectively redress the wrongs done to them in individual litigation. Even if class members could afford it, individual litigation would be an unnecessary burden on the Court. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Defendant AP 11's conduct. By contrast, the class-

action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

116. Defendant AP 11 violated the VCPA, Va. Code § 59.1-200, by, at a minimum:

a. Representing to Plaintiff and the putative class members that they owe a Pest Fee, Trash Fee, and/or Community Fee, when in fact such services are guaranteed and unwaivable under the Virginia warranty of habitability as part of their right to a safe and habitable premises and clean and orderly common spaces;

b. Representing to Plaintiff and the class members that they can charge and assess a utility Billing Fee of $4.40 per resident per month, when in fact AP 11 knew at the time it assessed the fee that it generated far more than the actual costs of administration for the third-party utility service provider;

c. Representing to Plaintiff and the class members that the Pest Fee, Trash Free, and/or Community Fee was merely for the cost of "service to [their] dwelling" units, when in fact AP 11 knew at the time it made such representation that each Fee did not cover services to the dwelling but in fact covered common area maintenance, trash collection, and pest treatments;

d. Representing to Plaintiff and the putative class members that the Pest Fee, Trash Fee, and/or Community Fee were merely a flat rate "allocat[ion]" of the "bills . . . billed by the service provider to us" for each service, when in fact AP 11 knew at the time it made this representation that it each Fee was set not based on the actual costs of the services but based on the maximum possible

profit it could generate from each Fee based on surveys of market competitors;

e. Representing to Plaintiff and the putative class members that the Pest Fee, Trash Fee, and/or Community Fee were a "fair and reasonable" estimation of the costs of each service, when in fact AP 11 knew at the time it made this representation that it each Fee was set not based on the actual costs of the services but based on the maximum possible profit it could generate from each Fee based on surveys of market competitors;

f. Representing that the Pest Fee, Trash Free, and/or Community Fee merely cover certain services—i.e., have certain uses and benefits—when in fact they are specifically set by AP 11 at prices far higher than the actual costs of those services and are designed to benefit only Defendants;

g. Representing that the Pest Fee, Trash Fee, and Community Fee are merely "utilities" that may be passed on to the tenants under Virginia law, when in fact that is not the case.

117. The above affirmative misrepresentations and material omissions constitute, at a minimum, violations of Va. Code 59.1-200(5) and (6), insofar as they misrepresent that the goods and services provided by the fees have certain qualities, characteristics, uses or benefits, or are of a particular standard, quality, grade, style, or model. They also constitute a "deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction," in violation of Va. Code § 59.1-200(14).

118. "The VCPA creates a new, statutory cause of action distinct from and in addition to common law fraud." *Ballagh v. Fauber Enters.*, 290 Va. 120, 124 (2015) (citing *Owens v. DRS Auto. Fantomworks, Inc.,* 288 Va. 489, 497, 764 S.E.2d 256, 260 (2014) ("[T]he legislative purpose underlying the VCPA was, in large part, to expand the remedies afforded to consumers and to relax the restrictions imposed upon them by the common law.... Therefore, [it] extends considerably beyond fraud.")). The elements "of the two claims are [therefore] different." *Id.* The VCPA applies to *both* misrepresentations and fraudulent acts by landlords in relation to a lease agreement, as outlined in § 59.1-200. Va. Code § 59.1-199(5). With respect to misrepresentations under the VCPA, a plaintiff need only show (1) reliance and (2) damages. *In re Lumber Liquidators Litig.*, No. 1:16-md-2743, 2017 WL 29111681, at *12-13 (E.D. Va. July 7, 2017) (Trenga, J.). There is no requirement that the plaintiff establish the defendant's knowledge of the falsity or an intent to deceive, though the plaintiff may seek damages for willful violations. *See id.*

119. Here, Plaintiff and the putative class members relied on the representation that they were required to pay the Disputed Fees when they signed their lease agreements and agreed to pay and paid the fees in the amount provided under those agreements. Plaintiff and the class members would not have paid the Disputed Fees but for Defendants' representation that they were owed and that they had certain uses and benefits.

120. Plaintiff and the putative class members have been damaged by Defendant AP 11's misrepresentations and material omissions, including through payment of the Disputed Fees in reliance on Defendants' representation that they were owed and would have certain uses and benefits.

121. Defendant AP 11's violations were willful. AP 11 knew at the time it imposed the Disputed Fees that such fees could not be charged under the clear language of Virginia law and the decision of the Virginia Court of Appeals that prohibited it from charging and collecting the fee in return for providing pest control services and maintaining common spaces in good condition. AP 11 also wanted to deliberately conceal the scheme, as it knew the fees violated the warranty of habitability imposed on landlords and that if tenants knew the fees could not be assessed or were in fact for a profit-generating purpose, the tenants would refuse to pay the fees or otherwise organize against their imposition. AP 11 concealed and willfully misrepresented the true purpose of the Fees for its pecuniary gain, as the fees would help its bottom line.

122. Plaintiff and the putative class members are thus entitled to damages for each month in which AP 11 collected, or will collect, the Disputed Fees, including, at a minimum, either: (1) their actual damages or $500 per month, whichever is greater, if AP 11's conduct was not willful; or (2) three times their actual damages or $1,000 per month, whichever is greater, if AP 11's conduct was willful. Va. Code § 59.1-204.

123. Plaintiff and the putative class are also entitled to their attorneys' fees and costs in prosecuting this action under Va. Code § 59.1-204.

124. And Plaintiff and the putative class are entitled to injunctive relief enjoining the ongoing collection of the Disputed Fees under Va. Code §§ 59.1-203(C) and 59.1-205.

**COUNT FIVE**
**VIOLATION OF VRTLA, Va. Code § 55.1-1258**
**(Individual Claim by Plaintiff against AP 11)**

125. Plaintiff incorporates each of the preceding allegations.

126. Plaintiff filed this action on October 10, 2025, asserting, in relevant part, that her landlord, AP 11, violated certain provisions of the VRLTA.

127. AP 11 had knowledge of this action, as evidenced by its filing of a motion to dismiss on December 5, 2025. ECF No. 13.

128. After gaining knowledge of this action, on or about February 2, 2026, AP 11 filed an unlawful detainer against Ms. Turnage in the General District Court for the County of Henrico asserting that she should be evicted for unpaid rent.

129. However, if not for the unlawful fees assessed by AP 11, Ms. Turnage was not in default on her rent at the time the unlawful detainer was filed.

130. Instead, upon information and belief, AP 11 filed the unlawful detainer to retaliate against Ms. Turnage for exercising her rights under the VRLTA and bringing public attention to AP 11's unlawful and deceptive practices.

131. Indeed, AP 11's intent is confirmed by the fact that it has since dismissed the unlawful detainer action, which it would not have done had Ms. Turnage in fact been in default on her rent as it asserted.

132. AP 11 thus violated Va. Code § 55.1-1258(A) by bringing an action for possession while knowing that Ms. Turnage had "made a complaint to or filed an action against the landlord for a violation of any provision of [the VRLTA]."

133. Plaintiff has been damaged by AP 11's retaliatory conduct, including suffering emotional distress from the threatened loss of her home of many years.

134. Plaintiff is thus entitled to her actual damages pursuant to Va. Code § 55.1-1258(B) and § 55.1-1259.

WHEREFORE, Plaintiff demands judgment for actual, statutory, and exemplary damages against Defendants; injunctive relief; their attorneys' fees and costs; pre- and post-judgment interest at the legal rate; and such other relief the Court considers proper.

**TRIAL BY JURY IS DEMANDED.**

Respectfully submitted,
**PLAINTIFF**

By:____*/s/ Kristi C. Kelly*______________

Kristi C. Kelly, VSB #72791
Andrew J. Guzzo, VSB #82170
Casey S. Nash, VSB #84261
J. Patrick McNichol, VSB #92699
Matthew G. Rosendahl, VSB #93738
**KELLY GUZZO, PLC**
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7572 – Telephone
(703) 591-0167 – Facsimile
Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com
Email: casey@kellyguzzo.com
Email: pat@kellyguzzo.com
Email: matt@kellyguzzo.com

*Counsel for Plaintiff*